IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDY GRAHAM,

        Plaintiff,

                              6:12-CV-1770-PK

                              FINDINGS AND
v.                             RECOMMENDATION

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Judy Graham filed this action on October 1, 2012, seeking judicial review of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Page 1 - FINDINGS AND RECOMMENDATION

Now before the court is the Commissioner's motion (#23) for remand of this action back to the Social Security Administration (the "Administration") for further proceedings. I have considered the motion, the parties' briefs, and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's motion should be granted, and this action should be remanded to the Administration for corrective proceedings.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, an Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.

Page 2 - FINDINGS AND RECOMMENDATION

*See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained,

Page 3 - FINDINGS AND RECOMMENDATION

work-related, physical and mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

Upon the Commissioner's motion for remand, this court has discretion to remand an administrative action to the Administration for corrective proceedings, or to reverse or modify the Administration's final decision without further proceedings. *See* 42 U.S.C. § 405(g); *see also Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir. 2000). "Generally," when the Commissioner's final decision is subject to reversal for non-harmless error, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), *quoting INS v. Ventura*, 537 U.S. 12, 16 (2002), *quoting Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). However, "where the record has been developed fully and further administrative proceedings would serve no useful purpose," the appropriate course is to "remand for an immediate award of benefits." *Id.* at 593, *citing Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id., citing Harman*, 211 F.3d at 1178. Moreover, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly

Page 5 - FINDINGS AND RECOMMENDATION

discredited testimony, remand for an immediate award of benefits is appropriate." *Id.* at 595.

## MATERIAL BACKGROUND AND ADMINISTRATIVE HISTORY

Graham protectively filed for DIB under Title II on June 20, 2007 and for SSI under Title XVI on July 18, 2007, asserting in support of both applications a disability onset date of December 18, 2003. Tr. 134, 110-112.[2] Graham described her disabling conditions as "[d]egenerative arthritis, bone disease, [and] learning disability." Tr. 139. The Administration denied her claims initially on October 26, 2007, Tr. 63, 64, 69-72, 73-76, and again on reconsideration on February 22, 2008, Tr. 26. On June 25, 2008, Graham requested a hearing before an administrative law judge, Tr. 78-79, and that hearing took place on December 2, 2009, Tr. 39-62. Graham and her legal representative appeared and testified at that hearing, as did a vocational expert. On February 22, 2010, the ALJ issued a decision finding Graham not disabled. Tr. 23-38. The Commissioner adopted the ALJ's finding as the Commissioner's final decision effective July 30, 2012. Tr. 1-6.

The ALJ found that Graham had severe physical impairments, specifically mild degenerative disc and uncovertebral joint disease of the cervical spine, tendonitis of the wrist, carpal tunnel syndrome, and lateral epicondylitis and bursitis of the shoulder, Tr. 28, but found those impairments not disabling for DIB and SSI purposes, Tr. 32-37. The ALJ did not find that Graham had severe mental impairments of any kind. Tr. 28-32. Graham does not challenge the ALJ's findings regarding her physical impairments; however, Graham argues, and the Commissioner now concedes, that the ALJ erred in failing to find severe mental impairments at

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 10.

the second step of the five-step evaluation process, in failing to evaluate the severity of her mental health impairments, and in failing to incorporate limitations stemming from her medically determinable mental impairments in his assessment of her residual functional capacity.

Specifically, the Commissioner now concedes that the ALJ erred in rejecting Graham's examining psychiatrist Gale Smolen's 2007 report of her mental status. Smolen found that Graham (then called Judy Kelsey) had a "pretty obvious speech impediment," that her "[t]hought processes were logical and goal directed," that her "[s]peech was of normal rate and rhythm with good eye contact," that her "[m]ood was depressed and irritable," that her "[a]ffect was full range and sensorium was alert," that she was "oriented to time place and person," that her "[immediate memory was for 2/3 items and recent memory was for 1/3 items after five minutes [and] [r]emote memory was considered very hazy," that she had significant problems with spelling, simple math, and comprehension of common idioms, that her "[d]igit span was for three numbers in reverse order," that she could only remember "two instructions out of a three step command," and that she "did very poorly on the intellectual portion of the mental status exam at all levels." Tr. 319-320. In relevant part, Smolen diagnosed Graham with a mood disorder due to pain and with cognitive disorder not otherwise specified. Tr. 320. Smolen opined that Graham was "possibly brain damaged" due to a childhood incident in which a knitting needle penetrated her skull, that she "was able to remember and understand with moderate to severe impairment, and to concentrate and attend with same," and that she was unlikely to be able to "get along well with people because of her mental disorder and particularly the problems with remembering and understanding, concentrating and attending, and probably instructions." Tr. 320.

By contrast, the Commissioner does not concede that the ALJ erred in rejecting the

opinion of Graham's treating physician Daniel Barrett as recorded on a questionnaire provided to Barrett by Graham's counsel, although Graham takes the position that the ALJ's rejection of Barrett's opinion was erroneous. Barrett opined that Graham (then likewise called Judy Kelsey) "suffer[ed] from an organic mental disorder . . . evidenced by . . . [d]isturbance in mood [and] [e]motional lability and impairment in impulse control," an "affective disorder . . . evidenced by . . . [a]nhedonia . . . , [d]ifficulty concentrating or thinking," and an anxiety disorder, and that she was in consequence "[e]xtreme[ly]" limited in "concentration, persistence, or pace" and "[m]arked[ly] limited in social functioning. Tr. 374-375.

## ANALYSIS

In opposition to the Commissioner's motion, Graham does not argue that the ALJ's conceded error in rejecting Smolen's report regarding Graham's mental status constitutes grounds for immediate award of benefits, and indeed does not address Smolen's report. Moreover, my analysis of Smolen's report, the ALJ's written opinion, and the other evidence of record leads me to agree with the Commissioner that the erroneous rejection of Smolen's report warrants remand for corrective proceedings only. Even if the report were credited fully as true – and as the Commissioner notes, discrepancies between Smolen's reported opinion and other evidence of record, including her own prior examining notes, preclude application of the "credit-as-true" rule regarding improperly rejected evidence, *see Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989) – immediate award of benefits would be inappropriate because Smolen's opinion would not necessarily mandate a finding of disability, but rather is compatible with the finding that Graham could perform the requirements of jobs existing in significant numbers in the national economy. In light of the ALJ's conceded erroneous rejection of Smolen's report, remand for

Page 8 - FINDINGS AND RECOMMENDATION

further proceedings is appropriate to further develop the record, specifically to define an appropriate residual functional mental capacity, and to obtain the opinion of a vocational expert in connection with that mental RFC.

As to the ALJ's rejection of Barrett's questionnaire opinion, although I agree with Graham that, if the opinion were fully credited and the record contained no contradictory medical evidence, the opinion could support an immediate finding of disability on the ground that the described impairments would meet or equal one of the conditions enumerated at 20 C.F.R. § 404, subpt. P, app. 1, specifically listing 12.02 for organic mental disorders, I agree with the Commissioner that the rejection was justified under the applicable legal standards. In weighing a claimant's medical evidence, the Commissioner generally affords enhanced weight to the opinions of the claimant's treating physicians. *See* 20 C.F.R. § 404.1527(d)(2). Indeed, where a treating physician's medical opinion is well supported by diagnostic techniques and is not inconsistent with other substantial evidence in the medical record, the treating physician's opinion is accorded controlling weight. *See id.* Moreover, even where a treating physician's opinion is contradicted by competent medical evidence, it is still entitled to deference. *See id.*; *see also, e.g., Orn v. Astrue,* 495 F.3d 625, 631-632 (9th Cir. 2007) (where a treating physician's opinion is contradicted by medical evidence in the record it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527"), *quoting* S.S.R. No. 96-2p, 1996 SSR LEXIS 9. In consequence, an uncontradicted treating physician's opinion may only be rejected for "clear and convincing" reasons supported by evidence in the record, and a contradicted treating physician's opinion may only be rejected for "specific and legitimate" reasons supported by evidence in the record. *See Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir.

Page 9 - FINDINGS AND RECOMMENDATION

1998), *citing Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Notwithstanding the foregoing, no such deference is afforded a treating physician's opinion as to the ultimate issue of a claimant's disability or as to any other issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also* S.S.R. No. 96-5p, 1996 SSR LEXIS 2. However, medical opinions from a treating physician or any other source may not be simply ignored, even when they bear upon issues reserved to the Commissioner, but rather must be evaluated to determine the extent to which they are supported by evidence in the record. *See* S.S.R. No. 96-5p, 1996 SSR LEXIS 2. Nevertheless, although the Commissioner is required to evaluate every medical opinion, the Commissioner is only required to discuss "significant probative evidence" in her detailed findings. *Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (controverted medical opinion found to be neither significant nor probative), *quoting Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981).

As the Commissioner notes, the ALJ expressly addressed and thoroughly discussed Barrett's questionnaire opinion. Tr. 29-31, 32. Noting that "while Dr. Barrett is a treating source, he is not a specialist in the area of mental health," the ALJ expressly found, and my own analysis of the medical evidence of record confirms, that Barrett's own records "fail to support . . . his assessment" of Graham's mental impairments. Tr. 30, 31. Barrett's records from his initial consultation with Graham indicated that her mood-related symptoms "were either transient or mild." Tr. 30, 216, 218. In connection with follow-up appointments, Barrett's notes indicate that Graham either had no specific mood-related or cognitive complaints or that her symptoms were under good control. Tr. 30, 202, 205, 208, 342, 343, 390, 392-395. At a February 11, 2009, follow-up appointment, Graham denied any problems with her "thinking process." Tr. 387. At

Page 10 - FINDINGS AND RECOMMENDATION

no time did Barrett conduct any specific assessment of Graham's mental status of cognitive functionality. On the grounds that prior to his questionnaire opinion, Barrett's treatment notes did not indicate the existence of extreme cognitive impairments such as those described in the questionnaire, the ALJ found expressly that "Dr. Barrett's treatment notes fail to show an ongoing mood disorder or cognitive dysfunction." Tr. 31. The ALJ observed that Barrett's "notes show only intermittent treatment for a variety of complaints. Nowhere in his notes does he assess cognitive dysfunction or [make] a recommendation for mental health treatment." Tr. 31. Because the ALJ offered specific, legitimate reasons supported by medical evidence of record for his express rejection of Barrett's questionnaire opinion, remand for immediate award of benefits would not be justified on the basis of that rejection.

## CONCLUSION

For the reasons set forth above, I recommend that the Commissioner's motion (#23) be granted, and that this action be remanded to the Administration for corrective proceedings. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

///

///

///

Page 11 - FINDINGS AND RECOMMENDATION

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 29th day of January, 2014.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge